UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 17-00046-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| STEVEN BLAINE MCLENDON | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is a *pro se* letter motion for compassionate release to home confinement (Record Document 66) and a letter motion for appointment of counsel (Record Document 69) filed by Defendant Steven Blaine McLendon ("McLendon"). McLendon notes his health conditions relating to asthma and chronic bronchitis and seeks compassionate release to home confinement in light of the COVID-19 pandemic. See Record Document 66. The Government has responded in opposition to McLendon's motion. See Record Document 68.

The Court will first address McLendon's request for appointment of counsel. See Record Document 69. McLendon filed his letter motion for compassionate release to home confinement on June 8, 2020. On that same date, the Court entered a Standard Procedural Order stating:

> The [Office of the Federal Public Defender (FPD)] shall have five (5) days from the date the pro se motion is entered into the record to screen such matters and in appropriate cases file a motion to enroll or to request appointment of counsel from the Criminal Justice Act panel in the case of a prohibitive conflict that would prevent FPD representation of a client or other good cause supports appointment of outside counsel.

Record Document 67. On June 9, 2020, the FPD advised the Court that it would not be enrolling on behalf of McLendon. Appointment of counsel is not required in this instance under the Criminal Justice Act. See U.S. v. Whitebird, 55 F.3d 1007 (5th Cir. 1995). The

Court has also reviewed the record and declines to use its discretionary power to appoint counsel in this matter. Therefore, McLendon's request for appointment of counsel (Record Document 69) is **DENIED**.

On May 23, 2017, McLendon pled guilty to conspiracy to possess methamphetamine with intent to distribute and possession of a firearm in furtherance of drug trafficking, all in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 924(c). See Record Documents 39 & 41. On August 31, 2017, McLendon was sentenced to 156 months as to Count One (conspiracy to possess methamphetamine with intent to distribute) and 60 months as to Count Four (possession of a firearm in furtherance of drug trafficking ). See Record Documents 44 & 45. The sentences run consecutively. See id. McLendon is currently incarcerated at Oklahoma City FTC.

Compassionate Release under 18 U.S.C. §3582(c)(1)(A)

A judgment of conviction, including a sentence of imprisonment, "constitutes a final judgment and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824, 130 S.Ct. 2683, 2690 (2010). Title 18, United States Code, Section 3582(c) provides that the court "may not modify a term of imprisonment once it has been imposed," except in three circumstances:

(1) upon a motion by the Bureau of Prisons or the defendant for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A);

(2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); or

(3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

In this case, it appears McLendon moves to modify his sentence under 18 U.S.C. § 3582(c)(1)(A). Under this section, the Court may reduce a sentence "if it finds that extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018 only the Director of the BOP could file Section 3582(c)(1)(A) motions, also known as compassionate release motions. In 2018, Congress passed and President Trump signed the First Step Act, which among other actions, amended the compassionate release process. Under the First Step Act, Section 3852(c)(1)(A) now allows prisoners to directly petition courts for compassionate release. However, before filing compassionate release motions, prisoners must exhaust their administrative remedies in one of two ways:

(1) prisoners may file a motion with the court after fully exhausting all administrative rights to appeal the BOP's decision not to file a motion for compassionate release, or

(2) prisoners may file a motion with the court after requesting release and there has been "the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier."

18 U.S.C. § 3852(c)(1)(A). The administrative exhaustion provision of the First Step Act is set out in mandatory terms. It permits a court the authority to reduce a defendant's sentence only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Id. The statute sets forth no exceptions to this mandatory statutory exhaustion requirement.

Here, McLendon states that he sent the warden an electronic email on May 5, 2020 and has received no response. As noted by the Government in its response, this is insufficient proof that McLendon began the administrative process within the BOP. The Court further notes that Oklahoma City FTC has advised that it has no history of an administrative remedy filing on behalf of McLendon. See Record Document 68 at 2. While the Court is well aware of the effects of the COVID-19 pandemic and the risk at all BOP facilities, Section 3852(c)(1)(A) does not provide this Court with the equitable authority to excuse McLendon's failure to exhaust his administrative remedies or to waive the 30-day waiting period. Accordingly, the Court does not have authority at this time to grant the relief McLendon requests. See, generally, Ross v. Blake, --- U.S. ---, 136 S.Ct. 1850, 1856–57 (2016) (reviewing the Prisoner Litigation Reform Act and explaining that "mandatory [statutory] language means a court may not excuse a failure to exhaust"; This is because "a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."); but see Valentine v. Collier, No. 20-20207, 2020 WL 1934431, at *8 (5th Cir. Apr. 22, 2020) (Judge Higginson, concurring).[1]

---

[1] In his concurring opinion, Judge Higginson stated:

> Second, our reasoning on PLRA's exhaustion requirement does not foreclose federal prisoners from seeking relief under the First Step Act's provisions for compassionate release. See 18 U.S.C. § 3582(c)(1)(A)(i). Though that statute contains its own administrative exhaustion requirement, several courts have concluded that this requirement is not absolute and that it can be waived by the government or by the court, therefore justifying an exception in the unique circumstances of the COVID-19 pandemic. See, e.g., United States v. Russo, No. 16-cr-441 (LJL), 2020 WL 1862294, at *4–5 (S.D.N.Y. Apr. 14, 2020) (holding that, "[d]espite the mandatory nature of

The Court shares McLendon's concerns about the effect of the COVID-19 outbreak in BOP facilities. However, those concerns are not being ignored by the BOP or this Court. Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, "expand[s] the cohort of inmates who can be considered for home release." Pursuant to that provision of the CARES Act, on April 3, 2020, United States Attorney General William Barr issued a memorandum instructing the BOP to maximize transfer to home confinement "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations." See Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited 4/20/2020). The BOP is actively executing the mandate to immediately review all inmates who have COVID-19 risk factors. This Court believes the BOP is uniquely situated to perform such reviews in the first instance to determine if

---

[the statute's] exhaustion requirement," the exhaustion bar is "not jurisdictional" and can therefore be waived); United States v. Smith, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2–3 (S.D.N.Y. Apr. 13, 2020) (citing cases); see also Vigna, 2020 WL 1900495, at *5–6 (identifying the difficulties of the First Step Act exhaustion question while ultimately deferring a ruling until the petitioner exhausted his remedies); but see United States v. Raia, 954 F.3d 594, —— (3d Cir. 2020); United States v. Clark, No. 17-85-SDD-RLB, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020).

Valentine, 2020 WL 1934431, at *8. This concurrence does not persuade this Court to change its analysis that exhaustion is mandatory and cannot be waived.

some type of release, removal, or furlough is appropriate. The better judgment in this instance is to allow the BOP's established process a chance to work. Thus, McLendon's request for compassionate release is **DENIED**.

Request for Home Confinement

Because McLendon's request contains elements of both a motion for compassionate release and a request for release to home confinement, the Court will conduct an alternative analysis. Title 18, United States Code, Section 3624(c)(2) provides that the BOP's authority to release a prisoner "may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Under the CARES Act, "if the Attorney General finds that emergency conditions will materially affect" BOP functioning, the BOP Director may "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" under Section 3624(c)(2). Pub. L. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General found such conditions existed, stating "emergency conditions [created by COVID-19] are materially affecting the functioning" of the BOP. See Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited 4/20/2020). Thus, the BOP director now has the authority to grant home confinement to a larger group of prisoners. See id.

Section 3621(b) provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). The BOP considers bed availability, the prisoner's security designation, his programmatic needs, his mental and medical health needs, his

faith-based needs, recommendations of the sentencing court, other security concerns of the BOP, and the proximity to his primary residence. See id. "A designation of a place of imprisonment under [Section 3621] is not reviewable by any court." Id. The Fifth Circuit has followed this statutory directive, stating "a prisoner has no liberty interest or right to be housed in any particular facility, and the BOP has wide discretion in designating the place of a prisoner's imprisonment." Siebert v. Chandler, 586 Fed.Appx. 188, 189 (5th Cir. 2014), citing Olim v. Wakinekona, 461 U.S. 238, 244-245, 103 S.Ct. 1741, 1745 (1983) and 18 U.S.C. § 3621(b).

The CARES Act does in fact grant broad discretion to the BOP regarding release to home confinement. However, such decisions still remain exclusively with the BOP. Nothing in the CARES Act changed the statutory authority granted in Section 3621(b) and this Court still lacks the power to order home confinement under the CARES Act. See generally United States v. Williams, No. CR 2:12-539, 2020 WL 1940836, at *2 (S.D. Tex. Apr. 22, 2020) ("While the CARES Act allows the BOP Director to lengthen the amount of time a prisoner may be placed in home confinement, nothing in the Act grants individual prisoners the right to serve the remainder of their sentence in home confinement. The BOP still has exclusive authority to determine where a prisoner is housed. 18 U.S.C. § 3621(B)."); United States v. Read-Forbes, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); United States v. Engleson, 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (while court can recommend, ultimate decision whether to release inmate to home confinement rests with BOP); United States v. Hembry, 2020 WL

1821930, at *2 (N.D. Cal. Apr. 10, 2020); United States v. Carter, 2020 WL 1808288, at *2 (S.D. Ind. Apr. 9, 2020); United States v. Garza, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020). Thus, to the extent McLendon's letter motion is construed as a request for release to home confinement, such motion is **DENIED**.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that McLendon's letter motion for compassionate release to home confinement (Record Document 66) and letter motion for appointment of counsel (Record Document 69) be and are hereby **DENIED**. McLendon may re-urge his motion for compassionate release if he exhausts his administrative remedies within the BOP as set forth in Section 3852(c)(1)(A).

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 24th day of June, 2020.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT